May it please the court, Alex Little on behalf of Leda Health, I'd like to request five minutes for rebuttal. Leda Health was founded by sexual assault survivors to service the 80% of women and men who choose not to report their sexual assaults. In the aftermath of a sexual assault, a survivor has essentially five different options. They can choose, in some circumstances, to go to the police. Many do not. If they do so, the police will often be in charge of many aspects of that type of relief. They can choose to pursue civil relief. They can choose to go public. In fact, this company was first called the Me Too Kit because it arose out of that political moment. They could also, in some circumstances, pursue extrajudicial adjudications, whether it is in terms of a school, a Title IX proceeding, a board complaint, things of that sort. Or they could choose fifth to do nothing at all. Leda's kit serves all five of those types of victims and how they may wish to move forward. In the state of Washington, however, when Leda seeks to do that, it is not permitted to provide a message that this can be done at home, over the counter, or in the self-collected way. It is a message alone that renders the activities that it does to be illegal. In that way, the statute is unconstitutional. So I think that part of the statute, though, says that just selling the kit. So you have the part that's about the way it's marketed, and then it's 2A and 2B, I think. So to what extent is the anything about the marketing already just encompassed in the fact that you can't sell the kit, which would not that provision is not as much sounding like speech? I disagree that you cannot. There's no prohibition on just selling the kit because 2 does not exist without A or B. So 2 says in two different conditions you can't sell the kit. And so there's no standalone prohibition on selling a sexual assault kit. And we know that because the sexual assault kit definition in 1 is massively over-inclusive. It includes any item that can be used to collect sexual assault evidence. But 2B says a person may not sell, offer for sale, or otherwise make available a sexual assault kit if the person intends, knows, or reasonably should know that it will be used at home, basically. Yes, but then that second part is still speech. It's a different speech issue than the first. But the only way you would know whether it's intended to be done or it's reasonably likely to be done or whether they are wanting to do it is through speech. But that's true of any mens rea. I mean we only know really about what people are thinking because of things that they say usually, at least largely. And so any kind of mens rea element of a statute could be said, well, that's really speech, and then you challenge it as speech. I don't really understand how this is not the same as any other kind of mental state requirement that's part of a statute. Well, because the mental state, Your Honor, goes to expressive conduct. And so in 2B, the expressive conduct of how you are to use this product or you can use this product, it's not saying that you shouldn't go to police. It's not saying you shouldn't do X or Y. It's saying we can't in this circumstance allow you to know certain information. I'll give a very specific example. Well, suppose you had a statute that said that you can't sell drugs to somebody if you know that they intend to use it for suicide. Making up a statute. And how would you know that? It would usually be something you said. I think that's correct, Your Honor. So what's the problem with that? I think with that secondary portion, what you're getting at is the thing that they know or may not know is being done with that drug is the use of suicide. Suicide is not a permissible activity. Most states prohibit it. And so there's no bound to how the state could police speech by putting it in the same sort of format we have here. I cannot, for example, sell you a paper if I know or intend that you are going to use this paper to disparage Invermectin. I am not going to sell you a computer website service if I know or expect that you are going to use that computer website service to disparage a political party, maybe in a particular political party. So B would be okay if it said if the statute made using the kit for other than by law enforcement or a health care provider illegal, and it would be okay? I think it's a different statute. And let me give you sort of the most – the reason, I mean, we know that's not what they're doing here, and they're targeting the communication to victims of what you can and cannot do legally, is that Apple computer, your first argument today, many hours ago, talked about – I mean, Apple has iPhones. They certainly know, and their legal counsel certainly knows, that iPhones are used across the country to take photographs of men and women who have been sexually abused by themselves and that those photographs make their way into criminal prosecutions. They reasonably know that. And so the reading that the court is suggesting here is that that statute – that Washington cannot is banned iPhone sales, period, because they know that – Well, you'd have to say that an iPhone was a sexual assault kit. It is. It absolutely is. And I think that's one part that the district court just completely got wrong. The sexual assault kit definition is wildly broad, but it's what the – it's the law they broke. I didn't understand you to be making just an over-breath or vagueness standalone argument in this case. I'm not. And I will – I have to be careful with my terms. That's not the right way I meant to use that. It is incredibly broad in what it covers. And so the definition is straightforward. Is this a product that can collect evidence of sexual assault? To break down that definition, we need to know what evidence of sexual assault is. It does not say forensic evidence. It does not say DNA. It does not say saliva. It does not say secretions of a genital area. It says evidence of sexual assault. And so then I think the court would have to go and say what sort of evidence is relevant or introduced in a sexual assault case. Right now, I would say all of you there have sexual assault kits, a ballpoint pen that allows a survivor to write down her immediate – his or her immediate response to the assault. And that statement is introduced. Well, that pen allowed you to collect that evidence. I guess I think that you're trying to spill in your vagueness argument or something, though, because – It's not vague. And, I mean, I don't think it's vague. It's just truly that broad. And the reason that matters is because what they're prohibiting here is the collection of a whole host of legal activities that people do regularly all the time. It also goes to the tailoring question under Central Hudson. Why do people do it regularly all the time? Well, people regularly self-collect evidence that goes into a sexual assault case, whether or not it goes criminal or civil. But they might not sell it with – I mean they're not selling it with that intent. Well, it's not just the selling it for that intent. So the prohibition in B is to also include make available. And so one of the examples we used in our brief, and the state hasn't tried to refute it because I don't think they can, is that if I'm a parent of a minor who has been sexually assaulted, and I have any item that can be used to collect evidence, my iPhone, Polaroid camera, a plastic Ziploc bag, and I tell my child, here, I'm going to give you this, and I want you – I'm going to make it available to you to collect evidence. We're going to do it at home, and we're not going to go into the police department. I've made that available to you, and it's prohibited by 2B. First of all, why – you seem to be staying away from A and just concentrating on B. I don't intend to. That's the court that sort of directed me to B. I think A is even more problematic because there the only thing that renders the item illegal is how it is marketed. And I think we use the example of our brief – it's like page 21 or 22 – where we give two different photographs, and one item is legal to sell, one item is not. And the only reason it's legal to sell is because of the viewpoint discrimination that the marketing company who's – or the company that makes the kit says, hey, you should buy this hospitals and police departments or folks who are going to use it that way because it's a really good sexual assault kit. Same product, same advertisement. Hey, you can also do this at home, which is factually true and legally permissible. And so I think A is a clear prohibition on speech. It's content-based. But it leads pretty directly to a Central Hudson analysis. I think there's a good question whether Central Hudson applies or whether it's strict scrutiny, and I'll address that. But we think we win a remand and the entry of a preliminary injunction under either standard, whether it's Central Hudson or strict scrutiny. So let's talk about why you think you win under Central Hudson. I think the most direct route, Your Honor, is that it's not nearly tailored to achieve an important state interest. The state sort of throws out in their brief a couple of different interests. It's generally the idea that we think that it will harm sexual assault survivors. Now, what the statute actually prohibits is telling someone, marketing, that it can be done at home, that it can be done – these items can be found over the counter. But what they want to do is they want to make sure that these folks are able to get to a hospital and get the proper treatment that they need. That's what they've stated is their purpose in doing this. There's no – it's a laudable goal, but this doesn't actually achieve that in any sort of reasonable fit way that has ever been upheld by a court because the reasonable fit for that might be if you're going to sell a kit like this, you need to include information to tell a potential victim to go to the hospital. You may need to provide directions or an easily accessible directory. There's a whole host of much more reasonable – But didn't the internal document did some of that? It did. In fact, we don't have the kit because we're here on a motion to dismiss, but the kit has a – it does say in the supplemental excerpts there's a card, the first card that you get. And you can certainly see this in the case in Pennsylvania. It's a public record on the preliminary hearing there on the PI. The first thing the kit says is you should go to a hospital because you can get more complete care there than here. But we respect your autonomy. We respect your choice. And if you choose not to do so, here is what your options are. So I had understood that one of the main purposes here was to avoid the misleading impression that this would be admissible in a prosecution of the assaulter. I think that's certainly what they want you to believe. So I have a whole host of responses to that. The first is they ignore entirely that self-collected evidence is admissible. And what case in Washington has admitted it against a sexual assault defendant? Well, there's – in our complaint, all the way back in our complaint, we cite three. Can you point me to that? Yes. It's one of the first paragraphs in our complaint, Your Honor, in the excerpt of record. Where the kits were used and admitted? The kits were not used and admitted, but self-collected evidence was. Okay, but I asked about the kit. Well, let me answer that in two parts. The kit is intended to help survivors collect evidence in a better way than just no kit at all. And so, I mean, we have a very clear example of maybe not sexual assault evidence. But isn't that what they're trying to do, stop sort of this false sense of security, in a sense, that you're providing something that really doesn't do a whole heck of a lot because it won't be admitted? First, I'd say that second assumption is completely incorrect. The first point – and certainly not in this record. The first point I would say is that there are very different ways to achieve that. And what Judge Bassoon in the Middle District of Pennsylvania, who first had actually an evidentiary hearing, said that the hearing was revelatory because it explained that the sorts of assumptions the state is making about whether it would be harmful are completely unmoored from actual information. This is speculation. And this Court and others across the country have said you can't speculate that this may happen. There's a great 11th Circuit case, it's R&R Railroad, that talks about keeping speech out of the hands of the citizens because you're concerned about the choice they might make as a result is not a legitimate state interest. Counsel, I'm friends with various prosecutors throughout my career. And they would rather not have an officer talk to a victim so that they might screw up some information if there's something wrong with that, the collection of evidence. So I think they very much, the state very much cares about collecting information that could ultimately be used for the prosecution of this. They absolutely do, and we don't dispute that. On Excerpt from Record 151, we have two examples of cases where people self-collected evidence, brought it in. It was admitted. The courts upheld the admission, and it led to conviction. They weren't the kits because the kits had not existed back at that time period. But there's no reason – What's sort of disturbing about the kit is because it's that it's just stuff you have around your house. Well, maybe you might not have it around your house, but you certainly could get it at Walgreens. And so what the kit essentially is is items that any victim could get plus the information about how to use it in a way that may empower that victim to make other choices. Every question the court has had – But the point of that is to make them think that this is going to be usable. And the state is saying we're worried because it's actually not going to be usable, so this whole thing is a misleading product. Then that takes you directly to narrow tailoring. If that is the issue, warnings are the easiest and most direct route, and the court cannot say we are going to keep and allow the state to monopolize the entire fields of discussion about this topic and instead require warnings and let individuals choose. They could have also, if they're concerned, Your Honor, they could state we're going to explicitly bar in our evidentiary code self-collected evidence. They haven't done that. If they did that and someone likely to help sought to have a kit, well, then there could be a very direct consumer protection claim under a standard consumer protection lawsuit that you're alleging fraudulent stuff. They did not bring a case like that because they can't, because the truth is that evidence like this – I'll go back to maybe 25, 30 years ago, it may be longer, but the Bill Clinton impeachment case relied in great detail on self-collected semen from an individual who was a witness involved. That was done by a former D.C. Circuit judge who became the special prosecutor. He certainly understood there might be concerns about how that evidence was collected. But when you drill down to it, the State's asserted interest evaporates. And many of their affidavits that were used for the preliminary injunction appeal, they talk about, well, maybe it's admissible. I'm not sure if it's admissible. Maybe they'll get cross-examined a lot. It's essentially the State kind of voicing potential concerns, but drilled down the concerns don't carry the weight that would allow them to have a complete blanket ban on truthful speech. It's undeniably truthful. I think I should cut you off because I'll still give you three minutes for rebuttal, but let's hear from the other side. Good afternoon, Your Honors. Tara Hines for the State of Washington. Over-the-counter sexual assault evidence kits exploit sexual assault survivors at one of the hardest and most vulnerable times of their lives. These kits are not evidence. They have never been admitted into evidence. A kit is not evidence. The question is whether material collected. And one thing the kit does do is provide some direction to a place to do the DNA lab work. None of the results from these kits have ever been admitted in any court in any state. And this company has been around for five years. So I had trouble figuring out, though, that statement could be true if no one has even tried. Do you have a case that shows that it was found inadmissible? No, Your Honor. We don't have a specific case. But the point is, is this kit, being marketing this kit as evidence, when the fact that it has never been admitted into any court or any state, and there are very significant barriers. But it's just a little bit odd because without – we don't have a case either way. So you're assuming it won't be admissible, but I think usually there's a presumption of evidence being admissible. Well, we're not just assuming, Your Honor. When the prosecutors testified before the legislature, they identified the very significant barriers to admissibility here. They identified how is the chain of custody going to be established when a survivor is self-collecting evidence and then shipping it off to a – One of the examples that were given in the complaint and in the briefs of people who collected, I think they were both underwear and used the DNA evidence for it. It was not a single one of those cases involved the self-collection of evidence, sending it off to an out-of-state lab, private lab, that was not a law enforcement. Every single one of those cases – But they don't have to send it off to the lab. They could just keep it. They can keep it, but they've still got established chain of custody. They've got established – I mean, what LITA's offering is the test results from these cases. What you're saying is that those cases don't involve doing any DNA, doing any – Absolutely. And there are many barriers. There's not just the chain of custody. There's also foundational issues, including the test results. How are you going to overcome adherency barriers? How are you going to establish authenticity? How are you going to deal with the confrontation clause requirements? This lab is in Florida. They're not required. I mean, they're outside of Washington State's subpoena power. And when you sell this kit as an evidence kit, you are saying that this is going to be admissible in a court of law. You are marketing this kit to survivors of sexual assault. What about their argument that, well, we're providing more information. There was another way to do this just to indicate as much in the packaging. Why isn't that a more narrow way to tailor the restriction? Well, one, Your Honor, first, this is conduct and not speech. So I will get to it. I mean, the fact that you're looking at the labels to determine whether the intended use is prohibited does not mean this is speech. And this is exactly the issue that was presented in the Whitaker case. In that situation, selling saw palmetto extract was perfectly legal as long as you did not include a label saying it could be used for the treatment of a particular illness. Right? You can sell a copper bracelet, but you can't say that that can be used for the treatment of arthritis. But what's still at issue there is not speech. It is conduct because what is being prohibited is selling that product under that label. And it goes back to the U.S. Supreme Court's decision in Wisconsin v. Mitchell that the evidentiary use of speech for determining intent, for determining mens rea, for determining elements of a crime does not burden speech. It is still conduct that is being prosecuted in that context. In, for example, in hate crimes. That is still conduct. And so every single circuit court that has addressed this type of issue, including in the City of Providence case, including in Nicopure, says that when you're looking at the label just to look at the intended use, that is still conduct, not speech. The cases that they're citing are advertising bans. Those are bans directly on speech where the underlying product is perfectly legal. Suppose it is speech. What about Central Hudson? And what about in particular the contention that this is not targeted sufficiently because you could simply have a rule that says you have to tell people that it may not be admissible in evidence? Yes, Your Honor. Well, one, they've misstated the taste. It's not narrowly tailoring. It is no more extensive than necessary. And what the courts look to is whether it's a reasonable fit between the ends and the means chosen to accomplish those ends. It doesn't need to be a perfect fit. So this is not strict scrutiny. And courts are loathe to second-guess legislatures on their determination. Now, here the Washington legislature determined that if you market this kit as evidence, you're telling sexual assault survivors that this is going to be admissible in court. So you could simply require that they say it isn't. Including a disclaimer is not sufficient to address that issue. The legislature reasonably determined that saying we don't guarantee that this is going to be admissible in court when in all likelihood it could never be. The thing about this case is that the brochure that's in the kit, you could post on Facebook or YouTube and that would be fine, right? Right. Yes. It has a whole bunch of directions about how to do things. And if it said that you could do this, you couldn't bat that. And everything in the kit is perfectly legal and commonplace. And the only thing that's a little unusual is this possibility of sending it off to the lab. Well, I mean, that's the same with the copper bracelet for arthritis, Your Honor. Copper bracelets are legal. You can also post on Facebook that copper bracelets prevent arthritis. What you can't do is sell a copper bracelet saying it cures arthritis. That is conduct. That is not speech. And the fact that the intended use for the product is determined by reference to speech does not render it speech. So right there, we're at the conduct phrase. And if this court were to say it would implicate speech, think about what that could do to FDA regulatory. You know, right there under the FDA regulations, you cannot sell products as treating particular drugs until you have received FDA approval. What you are saying might be true. You know, what you're saying or, you know, it might not be possible to prove immediately by the government that it's untrue. But it's still conduct. It is not speech. But even if you do get to the central Hudson factors, I think Lita fails at the very threshold steps. The First Amendment doesn't apply, one, if there is an offer to engage in illegal conduct. I think that argument is totally circular, though, because they're challenging the statute that makes this illegal conduct. And I don't know how you can defend it then by just saying it's illegal conduct. How is this not totally circular? Well, in Whitaker, they said it sounds circular but rejected that argument. Because assuming that the government can regulate this product, assuming that Washington could say you cannot sell this product, they have the right to regulate based on the label because the evidentiary use. And then they went back through the analysis and relied again on the Wisconsin v. Mitchell, that referencing the label itself is not a burden on speech. Well, I'm not sure what would – I'm not sure Washington could bar selling just the Q-tips or whatever. What would be the basis? How would that even be rational? I mean, okay, fair enough. It might not be rational. But at the same time, I mean, what the Whitaker case says is that it seems like there's a circularity to it, but it rejected that argument, going back to the Wisconsin v. Mitchell argument that the evidentiary use of speech to determine an element or an intended use of a product does not implicate speech. That doesn't render it conduct. And in the Whitaker case, which is very squarely on point, I mean, saw palmetto extract is perfectly legal as long as it's not accompanied by a label doing a particular thing. No, but I guess I thought that it needed to be lawful conduct and also not misleading. Isn't that the issue? No, Whitaker was not based on the misleading prong of central Hudson. It was based on the conduct prong of central Hudson. And then it said even if there is some implication or some incidental burden on speech, it fails at the illegality, the threshold prong of central Hudson. So it did not go through the central Hudson analysis. It said, one, this is conduct, not speech under Wisconsin v. Mitchell. And, two, even if you get to central Hudson, you fail at the threshold step because it's illegal conduct. But there is another category under central Hudson. The First Amendment doesn't apply if it's illegal conduct or if it's inherently misleading. And the central Hudson standard only requires that it is more likely to deceive consumers than not. And calling this sexual assault evidence kits is more likely to deceive consumers, the targeted consumers in the specific context here, than it is not. Because not only has this never been admitted into court, but they have never discussed how these barriers would be overcome. How would you get over confrontation clause requirements? How would you get through the foundation and authenticity issues? There is a huge line of difficulties that they would have to overcome. And then even after that, if conceivably those could be overcome, then the burden would fall squarely on the sexual assault survivor to testify in excruciating detail about the forensic collection of their own evidence. And that is not something that is apparent when they're buying a sexual assault evidence kit. So this product Washington's legislature concluded is harmful to sexual assault survivors. They are likely to compromise the evidence that could be available if they were to choose to go to hospital. That it is not really serving any purpose because this evidence is not likely to be admissible into evidence. Prosecutor after prosecutor testified and submitted evidence before the legislature saying this will compromise sexual assault prosecutions. I won't prosecute crimes when this is done through the self-collection of evidence because of the barriers would be so difficult to overcome and the trauma to the sexual assault survivors would be so severe. And so in that context, certainly the legislature could conclude that this is more likely to deceive than it is not. And so right there, you fail at the central Hudson threshold factors and you don't need to go through the First Amendment analysis because the First Amendment does not apply. But if you do the fact that it's misleading or untrue all relies on reading evidence as meaning admissible evidence in court. Which I think in under Herrera, under this Court's interpretations, you interpret the language based on the context in which the product is sold, based on the targeted market. And this Court has recognized that when you're talking about things like legal issues, when you're talking towards sensitive audiences, you've got to take that context into consideration when you determine whether it is more likely to deceive than not. Now they are targeting sororities. Often filled with teenagers, they're not likely to know what the evidentiary burdens are to introducing the self-collected evidence. They're not likely to know that they're going to have to get on the stand to try to testify about things that are completely outside their own experience and their expertise about the forensic collection of evidence. They're not likely to know that if they try and attempt to do this, that will compromise their ability to go to a scene. They're not likely to know that once they collect any of this evidence and ship it off, we have no way of getting that expert to come back to Washington and testify in their favor. And that means they're not going to be able to be cross-examined about that DNA evidence. And so why couldn't there just be a huge warning on the outside of the kit that says, this can't be used in court? Well, I mean, Your Honor, it's being marketed for the self-collection of evidence. So the legislature could clearly make, reach the conclusion, a very reasonable conclusion, that that warning would be compromising. You know, it's being marketed as evidence. And then saying it's not evidence is completely confusing, right? And so this Court does not second-guess legislatures, and they don't require the narrowest possible means. What they do is say, is there a reasonable fit between the means and the ends? And here, the legislature has looked at this product. It has received a lot of testimony from experts, from hospitals, from survivor advocates, from law enforcement. But I think what Judge Friedland's question is, or at least what my question is, is if you had a product that said, if the kit said on the front of it, the products, the results of this collection are very unlikely to be admissible in court. Would that violate the statute? I mean, I think in that context, it probably wouldn't even fall within the statute. If it's not being marketed for the self-collection of evidence, and it's saying, here is a kit. It has never been used as evidence. It cannot be used as evidence. It's not likely to fall under either A or B, right? Because in that context, it's not necessarily a reasonable intent at that point that it would be used for the self-collection of evidence. The problem is these are being marketed for the self-collection of evidence. The problem is that evidence, I said this before, I think, that saying that this is evidence is not all that clearly misleading because evidence isn't all that clear. I mean, it may be that people think of evidence having something to do with the court, but it's not really what the word means. Well, Your Honor, if you're marketing this to sexual assault survivors, that's clearly the connotation there. And the court does, courts do recognize that it is very important to understand the context in which these products are being sold, and in particular the lack of knowledge or knowledge of the consumers that are being targeted. And here where you're talking about sexual assault survivors, then calling this an evidence kit is connoting that it would be an evidence kit. Somebody might want it, for example, to be evidence for a paternity later on. And then they shouldn't be marketing as the evidence collection kit. That's the part that is deceptive. That's evidence. I mean, I want evidence of who it was who raped me in case I need it for some reason later on. And, Your Honor, I think under the central Hudson prong, you don't need to look and see if there's every possible scenario. The question is, is it a reasonable means that is a reasonable fit between means and ends? And here it clearly is. This product will compromise successful prosecutions in the large scale. And so, you know, first it's, you know, it's a product that deals with conduct, not speech. And the legislature very reasonably determined that it would compromise sexual assault prosecutions. And this Court should respect the judgment of the legislature. It does not target expression. It does not violate the First Amendment. Thank you. Thank you. Let's hear rebuttal. Your Honors, one of the difficulties of responding to the arguments in this case, especially with no opportunity, we got a dismissal at the initial pleading stage, is to be able to rebut any of these things factually or with any sort of length other than short briefs. Everything that the state has said about admissibility, I could sit here for an hour late into the day and explain is not true. But it's beside the point because Judge Berzon's point is exactly correct. Number one, there are huge swaths. The reason I started with the four or five different things a sexual assault survivor may want to do is that four of them have nothing to do with criminal prosecution. And we know on this record, and they've conceded, that vast swaths of victims don't seek criminal prosecution. The state of Washington would tell all of those victims you can't collect even evidence of semen if you want to go public. But isn't that how you're advertising this product as a collection of evidence? They are. I mean, they're not advertising the product, no. The way that LITA's business model works is we're going to work with the sorority. We're going to work with the unhoused. We're going to work with the immigrant groups, groups who don't want to go to the police. And we're going to say there's still an opportunity to you to have some sort of collection of what has happened as opposed to nothing. And then they provide wraparound services, which include the free provision of the kit with instructions about how to do it and a care team around them with a number or an app as to how to actually use those things. None of that is allowed. This kit is not being sold at all? No. And that's in the record. It's been in the record. LITA, from their affidavit, they give it out as part of comprehensive services. And the reason they do that is because it's a necessary part of what they want to do, which is to empower survivors. But, Judge Berzon, the reason there's such sort of, I think, confusion about that point is that Washington from the beginning has confused every aspect of what it is trying to attack, what it sees. And you see this in the legislative record. So you're saying you're falling under make available, not under sell or sale? Yes, as this provision, absolutely. So how does the company make money? They have a service contract with a sorority, for example. We're going to provide- You are selling it to the sorority. Not selling it. No, it's just like the whole services. We're going to provide sexual assault response services and prevention and STI services, for example, to a group like a sorority. As part of that provision of services, wraparound services, we provide kits as well. There's not like a dollar- But then you are selling. It's part of your services. It's part of the services, yes. But the kits aren't sort of being marketed out, hey, go on Amazon, go buy this. And then once one is used and it gets sent to your lab, do they get a fee for that? No, but let me sort of say that point again. That decision about what to do with the evidence is solely in the survivor's hands. They have choices. They can do nothing with it. They could take it in to a SANE nurse. In fact, there are instructions in this version of the instructions you have in the record that if you want to collect this evidence, for example, you want it to go into CODIS, take this evidence and take it in to a police department. And so the misunderstandings about all of this is that, and I think it's why it's so important as a First Amendment issue, is the first reaction is, gosh, this seems bad. We shouldn't allow it. And that reactivity to an unpopular idea is absolutely clear in the legislative history. Well, I don't know if it's unpopular, counsel, but I guess what I've seen is there's been, you know, throughout history, so many different companies try to sell to vulnerable communities. I've seen that within the Latino community where these notarios, for example, go and target this particular community and say that we're able to provide certain kinds of services when in the end it's all baloney. So, you know, so I understand why the state in this case came through and issued this particular. And I have no objection to that. So let's make the statute prohibit false and misleading claims about sexual assault kits. Let's make it require warnings about what you can and cannot do. The whole FDA case law that they put in front of you is entirely inapplicable to what we have because all of the case law in Whitaker and Nicopure about the provision of a statement and the product has to do with a very unique scheme where based on how you intend it to be sold, it goes into a regulatory pathway. Based on that regulatory pathway, there may be pre-market approval that's required for the statements you make about that product because the FDA regulates the advertising around a subset of products. But the FDA does not say you can't make truthful claims if it's a certain sort of product, but you have to go through a regulatory scheme. They could have done that. They could say if you're going to market your product as a solution in any way to sexual assault, you must first do pre-approval and follow sort of an NDA, you know, an FDCA sort of provision, allow us to determine whether or not it's true, and if it is, we can allow it with sufficient warnings, have regulations like that. They skipped all of that and just gone to we don't like it, and so we're going to prohibit it at the highest level. And the only thing they prohibit are truthful statements, not about evidence. They don't say that the evidence part is not untrue. That is what they're saying. Well, the evidence piece is in the definition. And there is clearly true that many sexual assault kits, and I think it's difficult to say that an iPhone is not a sexual assault kit under this definition. And it's difficult to say that photographs are not probably the most prevalent evidence in most criminal cases. And it's just not true that if you sold an iPhone for this purpose, even if you did it at home, it would be impermissible. The last thing I'm going to say to you is that it's not true. Thank you both sides for your patience and your arguments. This case is submitted, and we are adjourned for the day. All rise.
judges: BERZON, FRIEDLAND, MENDOZA